# EXHIBIT A

**Exhibit A**

## IN THE COURT OF COMMON PLEAS
## OF BEAVER COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Creswell Heights Joint Authority, | ) | **CIVIL DIVISION** |
| | ) | G.D. No.: |
| Plaintiff, | ) | |
| | ) | **COMPLAINT IN CIVIL ACTION** |
| vs. | ) | CODE: 004 PRODUCTS LIABILITY |
| | ) | |
| AGC CHEMICALS AMERICAS, | ) | |
| INC., AGC, INC., ARCHROMA U.S., | ) | |
| INC., ARKEMA, INC., BUCKEYE | ) | |
| FIRE EQUIPMENT COMPANY, | ) | |
| CHEMDESIGN PRODUCTS, INC., | ) | |
| CHEMICALS INCORPORTED, | ) | |
| CLARIANT CORPORATION, | ) | |
| DEEPWATER CHEMICALS, INC., | ) | |
| DYNAX CORPORATION, NATION | ) | |
| FORD CHEMICAL COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff Creswell Heights Joint Authority ("Plaintiff"), by and through its undersigned counsel, brings this action against Defendants AGC Chemicals Americas, Inc.; AGC, Inc. (f/k/a Asahi Glass Co., Ltd.); Archroma U.S., Inc.; Arkema, Inc.; Buckeye Fire Equipment Company; ChemDesign Products, Inc.; Chemicals Incorporated; Clariant Corporation; Deepwater Chemicals, Inc.; Dynax Corporation; and Nation Ford Chemical Company (collectively, "Defendants"). Plaintiff, based on information, belief and investigation of Counsel, alleges as follows:

1

## I.    SUMMARY OF THE CASE

1.     Plaintiff brings this action against Defendants to recover any and all past and future compensatory and/or consequential damages for the investigation, remediation, removal, disposal, treatment, and monitoring of the ongoing contamination created by Defendants' products, attorneys' fees and costs, as well as any and all other damages available as a result of the actions and/or inactions of Defendants.

2.     Plaintiff is a Class Member in the settlements with 3M, DuPont, Tyco, and BASF in the *City of Camden* matter in MDL 2873. In this Complaint, Plaintiff does not seek damages for contamination of its public drinking water system from 3M, DuPont, Tyco, or BASF.

3.     Plaintiff brings this action against Defendants to recover the considerable costs and damages that it has incurred and will inevitably continue to incur—as a result of the presence of toxic compounds, identified as per- and polyfluoroalkyl substances ("PFAS"), on Plaintiff's real property and in Plaintiff's drinking water sources.

4.     Plaintiff's real property, infrastructure, wells, water sources and supply, water supply and delivery system infrastructure, including any treatment systems, treatment infrastructure, and associated properties are collectively referred to as "Plaintiff's Property" in this Complaint.

5.     PFAS is a family of compounds including perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonate ("PFOS"), chemicals that have long been manufactured as components for aqueous film-forming foam ("AFFF")—a product used to control and extinguish aviation, marine, fuel, and other fires.

6.     Both PFOA and PFOS are known to be toxic, persistent in the environment, and resistant to biodegradation.  These compounds move easily through soil and groundwater and pose a significant risk to environmental and human health and safety. Both are animal carcinogens and likely human carcinogens. Indeed, the United States Environmental Protection Agency ("EPA") has

2

stated that "human epidemiology data report associations between PFOA exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy-induced hypertension and preeclampsia, and cancer (testicular and kidney)" and that "there is suggestive evidence of carcinogenic potential for PFOS."[1]

7.      Upon information and belief, at various times throughout the 1960s to present date, Defendants designed, manufactured, marketed, distributed, and/or sold PFOA, PFOS, the chemical precursors of PFOA and/or PFOS, and/or AFFF containing PFOA, PFOS, and/or their chemical precursors (collectively, "Fluorosurfactant Products") throughout the United States, including in Pennsylvania.

8.      At all relevant times, upon information and belief, Defendants knew, or reasonably should have known, about the inherent risks and dangers involved in the use of PFAS compounds in their products—including that both PFOA and PFOS are mobile in water, not easily biodegradable, highly persistent in the environment, and present significant and unreasonable risks to both human health and the environment. Nevertheless, Defendants made a conscious choice to manufacture, market, sale, and otherwise place Fluorosurfactant Products into the U.S. stream of commerce for decades, all while knowing PFAS compounds would be inevitably released into the environment when used as directed and intended by the manufacturers and failing to warn of the risks of use.

9.      By contrast, Plaintiff did not know, nor should it have reasonably known, of the ongoing contamination of its Property through the use of Defendants' Fluorosurfactant Products, as Defendants did not disclose the toxic nature and harmful effects of their Fluorosurfactant Products.

---

[1]See EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document No. 822-R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed February 17, 2025); *see also* EPA, *Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA)*, EPA Document Number: 822-R-16-005 (May 2016) at 16, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OM4O.txt (last accessed February 17, 2025).

10.    As a result of Defendants' unreasonable acts and omissions, PFAS compounds entered Plaintiff's Property. As the manufacturers and sellers of Fluorosurfactant Products, Defendants are responsible for the PFAS contaminants released into Plaintiff's Property.

11.    Through this action, Plaintiff now seeks to recover all available damages arising from the continuous and ongoing contamination of Plaintiff's Property caused by Defendants' actions as asserted in this Complaint. Such damages include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property.

## II.    PARTIES

### A.    PLAINTIFF

12.    Plaintiff Creswell Heights Joint Authority is located in Beaver County, Pennsylvania, with an office located at 3961 Jordan Street, South Heights, Pennsylvania 15081. Plaintiff operates a public water supply system pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300(f)(15), and the reporting system of the U.S. EPA.

13.    Plaintiff draws raw water from groundwater wells to provide potable water to a population of approximately 15,000.

### B.    DEFENDANTS

14.    Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have contaminated and continue to contaminate Plaintiff's Property, causing irreparable harm.

15.    **AGC AMERICA:** Defendant AGC Chemicals Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

4

16. **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

17. **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

18. **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

19. **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

20. **CHEMDESIGN:** Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

21. **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

22. **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

5

23.  **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801.

24.  **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

25.  **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

26.  All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the state of Pennsylvania.

27.  Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

28.  The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

6

### III.    JURISDICTION & VENUE

29.    This Court has jurisdiction pursuant to 42 Pa.C.S.A. § 931.

30.    Venue is appropriate in this county because it is the judicial district in which Plaintiff is a resident and citizen, a substantial part of the property that is the subject of this action is situated in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

### IV.    FACTUAL ALLEGATION

**A.    The Contaminants: PFOA and PFOS**

31.    Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

32.    PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

33.    PFOA and PFOS are stable, man-made chemicals. They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

34.    Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in

7

water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[2]

35.     Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

36.     Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS.

37.     According to the EPA, "studies indicate that exposure of PFOA and PFOS over certain levels may result in...developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).[4]

38.     The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[5]

39.     Additionally, the EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such

---

[2] See note 1, supra.

[3] See id.

[4] See EPA, Fact Sheet PFOA & PFOS Drinking Water Health Advisories, EPA Document Number: 800-F-16-003, available at available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OR9W.txt (last accessed February 17, 2025).

[5] See EPA, Health Effects Support Document for Perfluorooctane Sulfonate (PFOS), Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed February 17, 2025).

contamination is typically localized and associated with a specific facility, for example [...] an airfield at which [PFOA/PFOS] were used for firefighting."[6]

40.    EPA continues to research the effects of PFAS. In June 2022, after evaluating over 400 studies published since 2016 and applying human health risk assessment approaches, tools, and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure at which negative outcomes could occur are much lower than previously understood when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt). EPA announced new Interim Updated Health Advisory levels of 0.004 ppt for PFOA and 0.02 ppt for PFOS.[7]

41.    In April, 2024, EPA established legally enforceable levels, called Maximum Contaminant Levels (MCLs), for six PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, and HFPO-DA as contaminants with individual MCLs, and PFAS mixtures containing at least two or more of PFHxS, PFNA, HFPO-DA, and PFBS using a Hazard Index MCL to account for the combined and co-occurring levels of these PFAS in drinking water. EPA also finalized health-based, non-enforceable Maximum Contaminant Level Goals (MCLGs) for these PFAS. The MCLs for PFOA and PFOS are each 4 parts per trillion ("ppt").[8]

## B.    AQUEOUS FILM-FORMING FOAM (AFFF)

42.    Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

---

[6] See note 4, supra.

[7] EPA, Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS), EPA Document Number 822-F-22-002, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed February 17, 2025).

[8] EPA, Per- and Polyfluoroalkyl Substances (PFAS), Final PFAS National Primary Drinking Water Regulation, available at https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed February 17, 2025).

43.    Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

44.    The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. PFHxS is also formed during this process. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

45.    When used as the Defendants intended and directed, the AFFF manufactured and/or sold by the Defendants released PFOA and/or PFOS into the environment.

46.    Once PFOA and PFOS are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

47.    Notably, AFFF can be made without PFOA and PFOS. As such, fluorine-free foams do not release PFOA and/or PFOS into the environment.

48.    Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to the ongoing contamination and damages to Plaintiff's Property.

49.    Defendants' Fluorosurfactant Products have been used for their intended purposes in the process of fire protection, training, and response activities within Pennsylvania for many years. During these activities, Defendants' Fluorosurfactant Products were used as directed and intended

10

by the manufacturer, which allowed PFOA and PFOS to migrate through the subsurface and into the groundwater, enter Plaintiff's property, thereby contaminating Plaintiff's Property.

50.    Due to the chemicals' persistent nature, among other things, these chemicals have caused, and continue to cause, significant injury and damage to Plaintiff and Plaintiff's Property.

## C.    DEFENDANTS' KNOWLEDGE OF PFOA AND PFOS HAZARDS

51.    On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

52.    At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

53.    In 1980, 3M published data in peer reviewed literature showing that humans retain PFOA in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOA from their body after all exposures had ceased.[9]

---

[9] *See* Ubel, F.A., Sorenson, S.D., and Roach, D.E., *Health status of plant workers exposed to fluorochemicals - a preliminary report.* Journal Am. Ind Hyg. Assoc. J 41:584-89 (1980).

11

54.    By the early 1980s, the industry suspected a correlation between PFOA exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in workers' bodies and birth defects in children of workers.

55.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[10]

56.    Beginning in 1983, 3M documented a trend of increasing levels of PFOA in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[11]

57.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.  The company stopped producing PFOA at approximately the same time.

58.    After 3M exited the AFFF market in the United States, the remaining AFFF manufacturer Defendants continued to manufacture and sell AFFF containing PFOA and/or its chemical precursors.

---

[10] *See* DuPont, *C-8 Blood Sampling Results,* available at
https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.26293428.885409355.1683587869-581783177.1682689989 (last accessed February 17, 2025).

[11] Office of Minnesota Attorney General, Exhibit List, No. 1313,-3M, Internal Memorandum, *Organic Fluorine Levels,* (August 31, 1984), available at
https://www.ag.state.mn.us/Office/Cases/3M/StatesExhibits.asp (last accessed February 17, 2025).

59.     Defendants knew, or reasonably should have known, at all times relevant to this action that it was substantially certain that their acts and omissions as set forth herein would threaten public health, cause extensive contamination of Plaintiff's Property and otherwise cause the injuries described herein.

60.     Notwithstanding their respective knowledge of the dangers involved with AFFF containing PFOA and/or PFOS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold AFFF containing PFOA and/or PFOS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil and/or waste water disposal systems), thus improperly permitting PFOA and/or PFOS to contaminate soil and groundwater; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

61.     As a direct result of Defendants' acts alleged in this Complaint, Plaintiff's property has been contaminated, and will continue to be contaminated, with PFOA and PFOS. This has created a significant environmental and public health hazard until such contamination may be remediated. As a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA and PFOS contamination of its property at significant expense, loss and damage to Plaintiff.

62.     Defendants had a duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products, but they breached this duty. Defendants

13

moreover breached their duty to minimize the environmental harm caused by PFOA and PFOS. Moreover, Defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from the usage of Defendants' Fluorosurfactant Products in their intended manner for its intended purpose.

**D.    THE HARM TO PLAINTIFF RESULTING FROM CONTAMINATION**

63.    On at least one occasion, PFAS have been detected in Plaintiff's Property at levels above EPA's Health Advisory Levels.

64.    The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in Plaintiff's Property in varying amounts and at varying times has resulted, and will continue to result, in significant injury and damage to Plaintiff. It is the contention of Plaintiff that any detectible level of PFOA and/or PFOS on Plaintiff's Property requires investigation, remediation, and monitoring.

65.    Plaintiff has conducted and continues to conduct sampling, studies, and investigations related to PFAS, which requires funding by Plaintiff, including costs to conduct sampling, costs for its personnel to supervise the assessments, costs to develop PFAS treatment approaches, and costs to analyze available alternatives.

66.    The invasion of Plaintiff's Property with PFOA and PFOS is continuous and recurring, as new contamination flows regularly and constantly into Plaintiff's Property each day—the result of which is a new harm to the Plaintiff and its property in each occurrence.

67.    The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, Plaintiff's real property and Plaintiff's supplies of fresh drinking water. Plaintiff's interests in protecting its property and the quality of its water supplies constitutes

14

a reason for seeking damages sufficient to restore such real property and drinking water supplies to their pre-contamination condition.

68.     Through this action, Plaintiff seeks to recover damages (including but not limited to compensatory, punitive, and/or consequential damages) arising from continuous and ongoing contamination of Plaintiff's Property by Defendants' Fluorosurfactant Products.  Such damages include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property, and the costs of complying with EPA requirements to test nearby properties and provide alternate water or filtration systems to those properties.

## FIRST CAUSE OF ACTION

### PUBLIC NUISANCE

69.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

70.     Defendants have manufactured, distributed, marketed and promoted their product in a manner that created or participated in creating a public nuisance that unreasonably endangers or injures the property, health, safety and comfort of the general public and Plaintiff, causing inconvenience and annoyance.

71.     Defendants, by their negligent, reckless and willful acts and omissions set forth above, have, among other things, knowingly unleashed massive, long-lasting, and still spreading, contamination of groundwater and drinking water wells, having concealed the threat from all, thereby causing PFAS contamination of groundwater and contamination and threat of contamination of Plaintiff's wells.

72. By their conduct, Defendants violated, continue to violate, and/or threaten to violate public rights to pure drinking water as well as a clean and unpolluted natural environment, including reserves of unpolluted groundwater.

73. By their conduct, Defendants have unreasonably interfered with the right to uncontaminated groundwater and drinking water, common to the general public.

74. Actual and threatened PFAS contamination caused by Defendants' conduct has caused and continues to cause injury to the Plaintiff in the form of testing costs and the potential for serious interference with the use, benefit and/or enjoyment of its property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

75. Defendants' conduct has also injured and continues to injure the property, health, safety and/or comfort of a considerable number of persons.

76. PFAS contamination, both real and immediate, constitutes a current existing as well as prospective public nuisance.

77. Plaintiff, as owner of water production wells and as a purveyor of drinking water, suffered injuries different in kind from the community at large precisely because it relies upon production wells for its business.

78. Plaintiff's special injuries therefore include: additional testing costs, loss of water production capacity and loss of consumer confidence arising out of the increasingly widespread public perception - based on actual fact - that the underground aquifers have been rendered less certain, safe and reliable relative to other sources of water.

79. Defendants knew or in the exercise of reasonable care should have known that the introduction and use of PFAS-containing AFFF would and has unreasonably and seriously endangered, injured and interfered with the ordinary comfort, use and enjoyment of vital groundwater resources relied upon by the Plaintiff.

80.    As a direct and proximate result of Defendants' acts and omissions creating the above-described nuisance, Plaintiff suffered injuries common to the public at large and additional special injuries from actual and/or threatened contamination of the Plaintiff's wells and the groundwater supplying Plaintiff's production wells.

## SECOND CAUSE OF ACTION

### PRIVATE NUISANCE

81.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

82.    The groundwater system, including the zone of influence in the groundwater that supplies Plaintiff's production wells, has been contaminated by PFAS as a direct and proximate result of the intentional, unreasonable, negligent and reckless conduct of Defendants, all as alleged herein.

83.    This nuisance that Defendants have inflicted upon Plaintiff is substantial, unreasonable, and intentional or negligent.

84.    PFAS contamination caused by Defendants' conduct has damaged Plaintiff's property and business and unreasonably interfered with the use, benefit and enjoyment of Plaintiff's property.

85.    As a direct and proximate result of Defendants' acts and omissions, PFAS at all times relevant to this litigation has:

  a. posed and continues to pose a threat to groundwater and Plaintiff's production wells;

  b. contaminated and/or will contaminate Plaintiff's wells and groundwater in the vicinity of Plaintiff's property;

  c. required and/or will require testing and monitoring of the Plaintiff's wells for PFAS contamination;

17

     d.     requires or will require remediation of PFAS groundwater contamination or, where remediation is impracticable or insufficient, installation of a system to filter out PFAS or procurement of water from alternative sources;

     e.     diminished and will continue to diminish the Plaintiff's and consumers' confidence in, and the use and enjoyment of, Plaintiff's water and property;

     f.     diminished and will continue to diminish Plaintiff's property value due to actual, impending, or threatened contamination; and

     g.     caused and/or will cause Plaintiff to sustain substantially increased expenses, loss of the use of water and a threat to its appropriative water rights, all to Plaintiff's damage in an amount within the jurisdiction of this court.

86.     As a direct and proximate result of Defendants' acts and omissions creating the above-described nuisance, Plaintiff has suffered injuries from contamination of the groundwater supplying the Plaintiff's production wells.

87.     Defendants had actual knowledge of PFAS' propensity to contaminate groundwater and that PFAS did, in fact, contaminate groundwater where PFAS-containing products were used. Defendants intentionally promoted sales of PFAS and AFFF containing PFAS in conscious and/or reckless disregard of the known risks of injury to health and property. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or deliberate disregard for the health and safety of others, the safety of groundwater and drinking water supplies, and for Plaintiff's water rights.

88.     Because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon Plaintiff, Plaintiff is entitled to punitive damages.

## THIRD CAUSE OF ACTION

### STRICT LIABILITY- DESIGN DEFECT AND/OR DEFECTIVE PRODUCT

89.    Defendants during the relevant time period were designers, manufacturers, refiners, formulators, sellers, marketers, and suppliers of PFAS-containing products.

90.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers and marketers of PFAS-containing products, including AFFF containing PFAS, Defendants owed a duty to all persons whom Defendants' petroleum products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous for its intended and foreseeable uses.

91.    When Defendants PFAS-containing products into the stream of commerce, it was defective, unreasonably dangerous, and not reasonably suited for its intended, foreseeable and ordinary transportation, storage, handling, and uses for the following reasons:

        a.     when used as intended, AFFF is sprayed directly into the environment;

        b.     when AFFF containing PFAS is released into the environment, PFAS has a tendency to mix with groundwater and migrate great distances;

        c.     PFAS is highly soluble in water;

        f.     PFAS is a known carcinogen and is unhealthy to ingest.

92.    Defendants, with knowledge of the risks, failed to use reasonable care in the design of AFFF containing PFAS.

93.    AFFF containing PFAS poses greater dangers to groundwater than would be expected by ordinary persons such as the Plaintiff, downstream handlers, users, and the general public exercising reasonable care.

94.    The risks which PFAS-containing AFFF poses to groundwater outweigh PFAS' utility extinguishing fires.

19

95.    Safer alternatives to PFAS exist and have been available to Defendants at all times relevant to this litigation.

96.    The above-described defects exceeded the knowledge of the ordinary person, and by the exercise of reasonable care Plaintiff would not be able to avoid the harm caused by AFFF containing PFAS.

97.    AFFF containing PFAS was distributed and sold in the manner intended or reasonably foreseen by the Defendants, or as should have been reasonably foreseen by Defendants.

98.    AFFF containing PFAS reached the consumer and the environment in a condition substantially unchanged from that in which it left Defendants' control.

99.    AFFF containing PFAS failed to perform as safely as an ordinary consumer would expect when used in its intended and reasonably foreseeable manner.

100.    As a direct and proximate result of the unreasonably dangerous and/or defective condition of AFFF containing PFAS and its introduction into the stream of commerce by Defendants, PFAS at all times relevant to this litigation has:

    a.    posed and continues to pose a threat to groundwater and to Plaintiff's production wells;

    b.    required and/or will require additional testing and monitoring of Plaintiff's production wells for PFAS contamination;

    c.    contaminated and/or will contaminate Plaintiff's production wells or groundwater in the vicinity of Plaintiff's property;

    d.    will require remediation of PFAS groundwater contamination or, where remediation is impracticable or insufficient, installation of a system to filter out PFAS or procurement of water from alternative sources; and

    e.    diminished consumer confidence in Plaintiff's water; and

    f.    caused and/or will cause Plaintiff to sustain substantially increased expenses, loss of the use of water and a threat to its appropriative water rights, all to Plaintiff's damages in an amount within the jurisdiction of this court.

101.    Defendants had actual knowledge of PFAS' propensity to contaminate groundwater and that PFAS did, in fact, contaminate groundwater where PFAS-containing products were used. Defendants intentionally promoted sales of PFAS-containing products in conscious and/or reckless disregard of the known risks of injury to health and property. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or deliberate disregard for the health and safety of others, the safety of groundwater and drinking water supplies, and for Plaintiff's water rights.

102.    Because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon Plaintiff, Plaintiff is entitled to punitive damages.

## FOURTH CAUSE OF ACTION

## STRICT LIABILITY- FAILURE TO WARN

103.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

104.    As manufacturers, distributors, suppliers, sellers and marketers of products containing PFAS, Defendants had a duty to issue warnings to Plaintiff, the public, public officials, downstream handlers, and users of the risk posed by PFAS.

105.    Defendants knew that PFAS-containing products would be purchased, transported, stored, handled, and used without notice of the hazards which PFAS poses to groundwater and wells.

106.    At all times relevant to this litigation, Defendants have had actual and/or constructive knowledge of the following facts which rendered PFAS-containing AFFF hazardous to groundwater and production wells:

21

a.    when used as intended, AFFF is sprayed directly into the environment;

b.    when AFFF containing PFAS is released into the environment, PFAS has a tendency to mix with groundwater and migrate great distances;

c.    PFAS is highly soluble in water;

d.    PFAS is a known carcinogen and is unhealthy to ingest.

e.    the foregoing facts relating to the hazards which PFAS poses to groundwater are not the sort of facts which Plaintiff and the general public could ordinarily discover or protect themselves against in the absence of sufficient warnings.

107.    Defendants breached their duty to warn by unreasonably failing to provide warnings concerning any of the facts alleged herein to Plaintiff, public officials, downstream handlers, users, and/or the general public.

108.    Defendants' failure to warn as alleged herein proximately caused reasonably foreseeable injuries to Plaintiff. Plaintiff and others would have heeded legally adequate warnings and PFAS-containing products would have been treated differently in terms of procedures for use, handling, storage, emergency response and/or environmental clean-up.

109.    As a direct and proximate result of Defendants' above-described failure to give warnings, PFAS has at all times relevant to this litigation:

a.    posed and continues to pose a threat to groundwater and Plaintiff's production wells;

b.    required and/or will require additional testing and monitoring of the groundwater and production wells for PFAS;

c.    contaminated, continues to contaminate, and/or will contaminate production wells or groundwater in the vicinity of Plaintiff's wells;

d.    required the need for remediation of PFAS groundwater contamination or, where remediation is impracticable, installation of a system to filter out PFAS or procurement of water from alternative sources; and

e.    diminished consumer confidence in Plaintiff's water; and

22

f.    caused and/or will cause Plaintiff to sustain substantially increased expenses, loss of the use of water and a threat to its appropriative water rights, all to Plaintiff's damage in an amount within the jurisdiction of this court.

110.    Defendants had actual knowledge of PFAS' propensity to contaminate groundwater and that PFAS did, in fact, contaminate groundwater where PFAS-containing products were used. Defendants intentionally promoted sales of PFAS and PFAS-containing products in conscious and/or reckless disregard of the known risks of injury to health and property. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or deliberate disregard for the health and safety of others, the safety of groundwater and drinking water supplies, and for Plaintiff's water rights.

111.    Because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon the Plaintiff, Plaintiff is entitled to punitive damages.

## FIFTH CAUSE OF ACTION

### TRESPASS

112.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

113.    Plaintiff is the owner and/or actual possessor of property, easements, wells, right to appropriate and use groundwater, and water rights. Defendants, their agents and employees, knew, or in the exercise of reasonable care should have known, that PFAS is extremely hazardous to groundwater and public water systems, including the property and other rights of the Plaintiff.

114.    Defendants intentionally, recklessly, and negligently caused PFAS to enter into the groundwaters, aquifers, and drinking water production wells operated by Plaintiff.

115.    As a direct and proximate result of Defendants' trespass, PFAS at all times relevant to this litigation has:

23

a. posed and continues to pose a threat to groundwater and Plaintiff's production wells;

b. contaminated and/or will contaminate Plaintiff's wells and groundwater in the vicinity of Plaintiff's property;

c. required and/or will require testing and monitoring of the Plaintiff's wells for PFAS contamination;

d. requires or will require remediation of PFAS groundwater contamination or, where remediation is impracticable or insufficient, installation of a system to filter out PFAS or procurement of water from alternative sources;

e. diminished and will continue to diminish the Plaintiff's and consumers' confidence in, and the use and enjoyment of, Plaintiff's water and property;

f. diminished and will continue to diminish Plaintiff's property value due to actual, impending, or threatened contamination; and

g. caused and/or will cause Plaintiff to sustain substantially increased expenses, loss of the use of water and a threat to its appropriative water rights, all to Plaintiff's damage in an amount within the jurisdiction of this court.

116. As a direct and proximate result of the trespass, Plaintiff has been damaged and is entitled to injunctive relief to abate the trespass and other damages alleged herein, including but not limited to, diminution in property value, loss of use and enjoyment, cost of bringing the property to its original condition, investigation, remediation, and treatment, and/or to such other appropriate relief Plaintiff may elect at trial.

117. Defendants had actual knowledge of PFAS' propensity to contaminate groundwater and that PFAS did, in fact, contaminate groundwater where PFAS-containing products were used. Defendants intentionally promoted the sale of PFAS and products containing PFAS in conscious and/or reckless disregard of the known risks of injury to health and property. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or deliberate disregard for the health and safety of others, the safety of groundwater and drinking water supplies, and for the Plaintiff's water rights.

24

118.    Because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon Plaintiff, Plaintiff is entitled to punitive damages.

## SIXTH CAUSE OF ACTION

### CIVIL CONSPIRACY

119.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

120.    At all times relevant to this lawsuit, Defendants actually knew of the hazards that PFOA and PFOS posed to the environment, including Plaintiff's Property.

121.    Beginning in the 1960s and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to Plaintiff. Each Defendant performed at least one overt act in furtherance of this conspiracy. Specifically, Defendants colluded for the avowed purpose of providing information about AFFF products containing PFOA and/or PFOS to the public and the government, with the true, unlawful purpose of:

    a.    intentionally misrepresenting to the EPA and the public that AFFF containing PFOA and/or PFOS was safe and did not pose a risk to human health and the environment;

    b.    concealing the dangers of AFFF containing PFOA and/or PFOS, including the products' characteristics and their propensity to contaminate soil and groundwater, from the government and public by, among other means, repeatedly misrepresenting how products containing PFOA and/or PFOS were being disposed of;

    c.    concealing the dangers of PFOA and/or PFOS from consumers and the public; and

    d.    using their considerable resources to fight legislation concerning PFOA and PFOS.

122.    As a direct and proximate result of Defendants' conspiracy, Defendants' AFFF products at all times relevant to this litigation have:

    a.    posed and continue to pose a threat to Plaintiff's Property;

    b.    contaminated and will continue to contaminate Plaintiff's Property;

    c.    contaminated and will continue to contaminate the soil, surface and groundwater on and within the vicinity of Plaintiff's Property;

    d.    required and will continue to require testing and monitoring of Plaintiff's Property for PFOA and PFOS contamination;

    e.    required or will require remediation of PFOA and PFOS contamination or, where remediation is impracticable or insufficient for Plaintiff, removal and disposal of the contamination;

    f.    diminished Plaintiff's confidence in, and the use and enjoyment of, Plaintiff's Property;

    g.    diminished Plaintiff's Property value due to actual, impending, and/or threatened PFOA and PFOS contamination; and

    h.    caused and/or will cause Plaintiff to sustain substantially increased damages and expenses resulting from the loss of the safety, use, benefit and/or enjoyment of its property.

## SEVENTH CAUSE OF ACTION

## NEGLIGENCE

123.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

124.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers and handlers of PFAS-containing products, including AFFF, Defendants owed a duty to Plaintiff as well as to all persons whom Defendants PFAS-containing products might foreseeably harm to exercise due care in the handling, control, disposal, sale, testing, labeling, use, warning, and instructing for use of PFAS-containing products.

26

125. Defendants had a duty and the financial and technical means to test its PFAS-containing products, and to warn public officials, downstream handlers, users, and the general public of any hazardous characteristics of PFAS known to them, their agents and employees.

126. Defendants had a duty not to contaminate the environment.

127. At all times relevant to this litigation, Defendants knew or should have known that:

    a.    When used as intended, AFFF is sprayed directly into the environment.

    b.    when PFAS is released into the environment, it has a tendency to mix with groundwater and migrate great distances;

    c.    PFAS is highly soluble in water;

    d.    when PFAS is released into the environment, it persists over long periods of time;

    e.    PFAS is a known carcinogen;

    f.    PFAS creates a need for more regular testing and monitoring of wells for early detection; and

    g.    the foregoing facts relating to the hazards which PFAS poses to groundwater are not the sort of facts which Plaintiff, downstream handlers, users, and the general public could ordinarily discover or protect themselves against in the absence of sufficient warnings.

128. Defendants have negligently breached their duties of due care to Plaintiff, downstream handlers, users, and the general public by, among other things:

    a.    failing to adequately test, identify and remediate wells that are contaminated with PFAS;

    b.    marketing, touting, and otherwise promoting the benefits of PFAS-containing products without disclosing the truth about the environment and potential health hazards posed by PFAS;

    c.    failing to eliminate or minimize the harmful impacts and risks posed by PFAS;

    d.    failing to curtail or reduce the distribution of PFAS-containing products;

    e.    failing to instruct downstream handlers, users, and the general public about

the safe handling and use of products containing PFAS;

    f.       negligently releasing PFAS into the environment;

    g.       failing to warn and instruct downstream handlers, users, and the general public about the risks to groundwater posed by PFAS-containing products.

129.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions on the part of Defendants, PFAS at all times relevant to this litigation has:

    a.       posed and continues to pose a threat to groundwater and Plaintiff's production wells;

    b.       required and/or will require additional testing and monitoring of groundwater and Plaintiff's production wells for PFAS contamination;

    c.       contaminated the groundwater system and zone of influence of the area that supplies Plaintiff's production wells;

    d.       required and will require remediation of PFAS contamination of groundwater or, when remediation is impracticable or insufficient, installation of a system to filter out PFAS or procurement of alternative water sources; and

    e.       diminished consumer confidence in the Plaintiff's water; and

    f.       caused and/or will cause Plaintiff to sustain substantially increased expenses, loss of the use of water and a threat to its appropriative water rights, all to Plaintiff's damage in an amount within the jurisdiction of this court.

130.    Defendants had actual knowledge of PFAS' propensity to contaminate groundwater and the fact that PFAS contaminates groundwater where PFAS-containing products are used. Defendants intentionally promoted the sale of PFAS and products containing PFAS in conscious and/or reckless disregard of the known risks of injury to health and property. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or deliberate disregard for the health and safety of others, the safety of groundwater and drinking water supplies, and for the Plaintiff's water rights.

131.    Because Defendants acted with malice in their conscious, willful, and wanton disregard of the probable dangerous consequences of their conduct and its foreseeable impact upon the Plaintiff, Plaintiff is entitled to punitive damages.

## PUNITIVE DAMAGES

132.    Under the applicable laws of the State of Pennsylvania, Plaintiff seeks punitive damages due to the wanton and willful acts and/or omissions of Defendants as set forth and alleged throughout this Complaint.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages according to proof including, but not limited to:

   a.    costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination on and within Plaintiff's Property;

   b.    costs and expenses related to the past, present, and future treatment and remediation of PFAS contamination of Plaintiff's Property or, in the alternative, the costs and expenses associated with and related to the removal and disposal of the contamination; and

   c.    costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within Plaintiff's Property.

2.    Punitive damages;

3.    Consequential damages;

4.    Costs, disbursements and attorneys' fees of this lawsuit;

5.    Pre-judgment and post-judgment interest; and

6.    Any other and further relief as the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

Dated: _____MAY 29_____, 2025

Respectfully submitted,

_____/s/  William G. Powers_____
**BARON & BUDD, P.C.**

William G. Powers, PA Bar No. 316876
2600 Virginia Avenue NW, Suite 600
Washington, District of Columbia 20037
Telephone: (203) 710-1518
Fax: (214) 520-1181

Scott Summy, TX Bar No. 19507500
Carla Burke Pickrel, TX Bar No. 13569600
Brett Land, TX Bar No. 24092664
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
Fax: (214) 520-1181

**COSSICH, SUMICH, PARSIOLA &
TAYLOR, LLC**

Philip F. Cossich, Jr., LA Bar No. 1788
Darren D. Sumich, LA Bar No. 23321
Christina Cossich, LA Bar No. 32407
Andrew J. Cvitanovic, LA Bar No. 34500
Jody J. Fortunato, LA Bar No. 31728
Louise R. Caro, FL Bar No. 633380
8397 Highway 23, Suite 100
Belle Chasse, Louisiana 70037
Telephone: (504) 394-9000
Fax: (504) 394-9110

Attorneys for Plaintiff
*Pro Hac Vice Pending*

30

## <u>VERIFICATION</u>

COMMONWEALTH OF PENNSYLVANIA     )
                                          )     SS:

COUNTY OF BEAVER                       )

        I verify that the statements made in the ***COMPLAINT*** are true and correct; that the attached document is based upon information which has been gathered by my counsel in the preparation of the lawsuit. The language of it is that of counsel and not of myself. I have read it and to the extent that it is based upon information which I have given to my counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the content of it is that of counsel, I have relied upon counsel in making this Verification. I understand that false statements herein made are subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

DATED: 5/20, 2025